WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Shari Ferreira, et al.,

           Plaintiffs,

v.

Joseph M Arpaio, et al.,

           Defendants.

No. CV-15-01845-PHX-JAT

**ORDER**

Pending before the Court is Defendants'[1] Motion to Dismiss, (Doc. 15), brought in response to Plaintiff Shari Ferreira's Third Amended Complaint ("TAC"), filed on December 2, 2015. (Doc. 12). The motion has been fully briefed, and oral argument was heard on July 20, 2016. The Court now rules on the motion.

**I.**

The Court need not set forth a full recitation of the facts underlying this matter. For purposes of adjudicating Defendants' pending Federal Rule of Civil Procedure 12 (b)(6) motion, a brief recital of the following facts—taken as true from the TAC—is

---

[1] Specifically, the motion was brought by Defendants Joseph M. Arpaio, Maricopa County, Jeffrey Alvarez, M.D., Deputy Sheriff Cormier, Deputy Sheriff Hewitt, Deputy Sheriff Hovanec, Deputy Sheriff Huber, Deputy Sheriff Hansen, Deputy Sheriff S. Johnson, Deputy Sheriff Wade, Deputy Sheriff Lt. B. Smith, and Deputy Sheriff Sgt. Garcia. (Doc. 15 at 2). The Court will refer to the movants collectively as "Defendants" throughout the Order.

sufficient. Plaintiff brought this civil rights action on behalf of decedent Zachary Daughtry in her capacity as personal representative of the estate. (Doc. 12 at 1). Daughtry was initially arrested on December 12, 2013, and booked into the 4th Avenue Jail complex. (*Id.* at 8). Over the following months, Daughtry "had several assignments and transfers" to different facilities, but was ultimately transferred back to the 4th Avenue Jail on July 6, 2014. (*Id.*). Between his initial booking and July 6, Daughtry had been referred to "Psychiatric Services" on several occasions in light of "medical and mental health issues that required ongoing medical and psychological treatment." (*Id.*).

On July 9, 2014, fellow inmate Defendant Ryan Bates[2] was placed in a cell with Daughtry after Bates was discovered in a restricted area of the 4th Avenue Jail. (Doc. 12 at 9 ¶ 42-43). At approximately 2200 hours, officers were "escorting medical personnel and conducting a general headcount," and passed by Daughtry's cell. (*Id.* at 12 ¶ 67). When the officers passed by, they observed Bates standing over Daughtry, who was unresponsive and visibly bleeding from the head and face. (*Id.*). Daughtry received medical treatment on-site, and was subsequently transported to Banner Good Samaritan Hospital "with life threatening injuries." (*Id.* at 12-13). Daughtry suffered "multiple facial fractures, major head injuries including orbital fractures, nose fractures, a broken jaw, internal injuries, a subdural hematoma to the brain with brain bleed, and severe lacerations to his head and left ear." (*Id.* at 13). On July 20, 2014, Daughtry passed away from his injuries. (*Id.* at 15 ¶ 76).

This matter, initially brought in Maricopa County Superior Court, was removed on September 16, 2015. (Doc. 1). The Complaint, thrice amended, alleges claims of negligence, gross negligence, wrongful death, and constitutional violations under Title 42 U.S.C. § 1983 (2012). On December 21, 2015, Defendants filed the pending motion to dismiss. The motion has been fully briefed, (Docs. 15, 34, 38), and oral argument was

---

[2] At oral argument, Plaintiff asked that the Court dismiss Defendant Bates from the matter for failure to comply with service of process requirements under Federal Rule of Civil Procedure Rule 4(m). The Court will do so. In the interest of clarity, the Court will continue to refer to Bates as "Defendant" throughout the Order.

heard on July 20, 2016. Having set forth the pertinent factual and procedural background, the Court turns to Defendants' motion.

## II.

To survive a Rule 12(b)(6) motion for failure to state a claim, a complaint must meet the requirements of Fed. R. Civ. P. 8(a)(2). Rule 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief," so that the defendant has "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint must also contain sufficient factual matter, which, if accepted as true, states a claim to relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Facial plausibility exists if the pleader sets forth factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. Plausibility does not equal "probability," but requires more than a sheer possibility that a defendant acted unlawfully. *Id*. "Where a complaint pleads facts that are 'merely consistent' with a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id*. (citing *Twombly*, 550 U.S. at 557).

Although a complaint attacked for failure to state a claim does not need detailed factual allegations, the pleader's obligation to provide the grounds for relief requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). Rule 8(a)(2) "requires a 'showing,' rather than a blanket assertion, of entitlement to relief," as "[w]ithout some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." *Id*. at 555 n.3 (citing 5 Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1202, pp. 94, 95 (3d ed. 2004)). Thus,

1  Rule 8's pleading standard demands more than "an unadorned, the-defendant-unlawfully-

2  harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

3        The Court must construe the facts alleged in the complaint in the light most

4  favorable to the drafter and must accept all well-pleaded factual allegations as true,

5  *Shwarz*, 234 F.3d at 435, *Cafasso*, 637 F.3d at 1053, but need not accept as true legal

6  conclusions couched as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

7

8                                              **III.**

9        Defendants' motion, (Doc. 15), asserts several grounds for dismissal, contending

10  that: (1) Defendants cannot be held liable for mere negligence pursuant to A.R.S. § 12-

11  820.02 (A)(4); (2) Plaintiff failed to name or serve certain Defendants with a Notice of

12  Claim ("Notice"), as required by A.R.S. § 12-821.01; and (3) the TAC fails to state a

13  plausible claim against certain Defendants. The Court will address each of the arguments

14  in turn.[3]

15

16  **A.      Plaintiff's Negligence Claim**

17        Count One of the TAC asserts a claim of "[g]ross [n]egligence and [n]egligence

18  against [a]ll Defendants." (Doc. 12 at 16). "A.R.S. § 12-820.02 (A)(4) requires a showing

19  of 'gross negligence' in order for a public entity or employee to be liable for 'an injury

20  caused by a prisoner to any other prisoner.'" *Murphy v. County of Yavapi*, No. CV-04-

21  1861-PCT-DGC, 2006 U.S. Dist. LEXIS 63732, at *21-22 (D. Ariz. Aug. 23, 2006)

22  (citation omitted). A.R.S. § 12-820 (5) defines "prisoner" as "a person incarcerated while

23  awaiting sentence or while serving a sentence imposed by a court of law."

24

25  _____

26        [3] Defendants' motion initially argued that Plaintiff's 42 U.S.C. § 1983 claims
    should be dismissed due to Plaintiff's lack of standing to bring a civil rights claim on
27  behalf of Daughtry's estate. (Doc. 15 at 11-12). However, Plaintiff has since been
    appointed the personal representative of Daughtry's estate, and Defendants withdrew this
28  argument. (Doc. 38 at 2).

1    Plaintiff does not contend that Defendant Bates' and Daughtry's status is anything

2    other than "prisoner" as defined by the statute, and "do[es] not contest that, for purposes

3    of [the] state law claims for relief, the appropriate standard of culpability is that of gross

4    negligence." (Doc. 34 at 10) Accordingly, to the extent the TAC alleges a claim of

5    negligence against Defendants, it is hereby dismissed, with prejudice.

6

7    **B.    Compliance with A.R.S. § 12-821.01**

8    The motion next argues that Defendants Alvarez, Cormier, Garcia, Hansen,

9    Hewitt, Hovanec, Huber, Johnson, Smith, and Wade were not named in, or served with a

10   Notice, as is required by A.R.S. § 12-821.01. (Doc. 15 at 8-10). Defendants further assert

11   that because the state law claims are barred for failure to comply with the notice of claim

12   statute, all vicarious liability claims asserted against Defendants Arpaio and Maricopa

13   County also fail.[4] (Doc. 38 at 8).

14   The Court must first address whether it may entertain Defendants' argument,

15   which relies on documentary evidence outside of the TAC. On a motion to dismiss for

16   failure to state a claim, the scope of review is generally "limited to the contents of the

17   complaint." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) (citing *Warren v. Fox*

18   *Family Worldwide*, *Inc.*, 328 F.3d 1136, 1141 n.5 (9th Cir. 2003)). However, the Court

19   may also consider any evidence upon which the complaint "necessarily relies," which is

20   satisfied where: "(1) the complaint refers to the document; (2) the document is central to

21   the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to

22   the 12(b)(6) motion." *Id.* (citing *Branch v. Tunnell*, 449, 453-54 (9th Cir. 1994),

23   *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th

24   Cir. 2002)). Having reviewed the TAC and the Notice attached to Defendants' motion,

25   (Doc. 15-1 at 2), the Court finds that the TAC necessarily relies on the Notice.

26   First, the TAC explicitly refers to the document, as it alleges that "Plaintiff

27   _____

28   [4] The Court will address this particular argument *infra*, in Section IV of the Order.

satisfied the provisions of A.R.S. § 12-821.01 by serving a notice of claim more than 60 (sixty) days prior to the date of the filing of this complaint," and that certain "Defendants denied the claim" while "[o]ther [D]efendants have not responded to the notice of claim." (Doc. 12 at 4). Second, the Notice is central to Plaintiff's claim. As discussed fully *infra*, Arizona law mandates that any person who has a claim against a public employee must file a Notice prior to filing suit. A.R.S. § 12-821.01 (A). Failure to strictly comply with the statute's requirements results in preclusion of a plaintiff's claims. *Simon v. Maricopa Med. Ctr.*, 234 P.3d 623, 631 (Ariz. Ct. App. 2010). The importance the Arizona legislature has placed on compliance coupled with the harsh penalty for noncompliance make this procedural prerequisite central to Plaintiff's civil rights claims against public employees. Finally, neither party questions the authenticity of the Notice attached to Defendants' motion. Accordingly, the TAC necessarily relies upon the Notice, and may consider it. *See Mitchell v. City of Flagstaff*, CV 11-8140-PCT-FJM, 2011 U.S. Dist. LEXIS 133766, at *3 (D. Ariz. Nov. 18, 2011) (considering a Notice in adjudicating a Rule 12(b)(6) motion to dismiss).

As noted *supra*, prior to filing suit in state or federal court, Arizona law requires that "[p]ersons who have claims against a  . . . public employee shall file claims with the person or persons authorized to accept service for the  . . . public employee as set forth in the Arizona rules of civil procedure." A.R.S. § 12-821.01 (A); *Simon*, 234 P.3d at 629. The Notice must be submitted "within one hundred eighty days after the cause of action accrues," and must contain a statement of the facts that establish the basis for liability and an amount for which the claim can be settled. A.R.S. § 12-821.01 (A). This allows "the public entity to investigate and assess liability, permit the possibility of settlement prior to litigation, and to assist the public entity in financial planning and budgeting." *Martineau v. Maricopa County*, 86 P.3d 912, 915-16 (Ariz. Ct. App. 2004). Accrual of a cause of action occurs "when the damaged party realizes he or she has been damaged and knows or reasonably should know the cause, source, act, instrumentality or condition that caused or contributed to the damage." A.R.S. § 12-821.01 (B).

"[S]trict compliance with A.R.S. § 12-821.01 (A) is required." *Simon*, 234 P.3d at 629 (citing *Falcon ex. rel. Sandoval v. Maricopa County*, 144 P.3d 1254, 1256 (Ariz. 2006)). "Substantial compliance" is insufficient, even if the defendants have "actual notice of the claim." *Id.* (citation omitted). Should a plaintiff fail to file a Notice within the statutory time limit, her "claim is barred by statute." *Falcon*, 144 P.3d at 1256 (citing *Salerno v. Espinoza*, 115 P.3d 626, 629 (Ariz. Ct. App. 2005)); *see also Crum v. Superior Court*, 922 P.2d 316, 317 (Ariz. Ct. App. 1996) (failure to include all claims and a settlement amount in the Notice resulted in preclusion).

Plaintiff's TAC alleges claims against Maricopa County, Maricopa County Sheriff Joeseph M. Arpaio, M.D. Alvarez, and Deputy Sheriffs Cormier, Hewitt, Hovanec, Huber, Hansen, Johnson, Wade, Smith and Garcia. The TAC refers to the individually named Deputy Sheriffs and M.D. Alvarez as employees of either Maricopa County or Maricopa County Sheriff Joeseph Arpario. (Doc. 12 at 3-5). Arizona courts have repeatedly held that to comply with Arizona's notice of claim statute, a prospective plaintiff must furnish a copy of the Notice on "both the employee individually and to his employer." *Harris v. Cochise Health Sys.*, 160 P.3d 223, 230 (Ariz. Ct. App. 2007) (citation omitted); *Hendershott v. Babeu*, 2015 Ariz. App. Unpub. LEXIS 372, at *11 (Ariz. Ct. App. March 24, 2015) (citation omitted); *Dana v. City of Yuma*, 2011 Ariz. App. Unpub. LEXIS 1085, at *14 (Ariz. Ct. App. Aug. 16, 2011); *Dimmig v. Pima County*, 2009 Ariz. App. Unpub. LEXIS 1520, at *5 (Ariz. Ct. App. Oct. 27, 2009); *Havasupai Tribe v. Ariz. Bd. of Regents*, 204 P.3d 1063, 1080 (Ariz. Ct. App. 2008); *Valenzuela v. City of Phoenix Police Dep't*, 2007 Ariz. App. Unpub. LEXIS 885, at *3 (Ariz. Ct. App. Dec. 31, 2007); *Crum*, 922 P.2d at 317; *see also Johnson v. Superior Court*, 763 P.2d 1382, 1384 (Ariz. Ct. App. 1988) (recognizing that under the predecessor statute a claimant "must give notice of the claim to both the employee individually and to his employer").

Having reviewed the record in its entirety, the Court finds no evidence that Plaintiff filed a Notice with the individually named employee Defendants in this lawsuit.

Even accepting Plaintiff's assertion that she did not know of the individual Defendants' conduct and identities until April of 2015, (Doc. 34 at 10), Plaintiff has *never* filed a Notice with *any* individual employee Defendant. Thus, even if the cause of action that forms the basis for this lawsuit did not accrue until April of 2015 under A.R.S. § 12-821.01 (B), the 180 day time limit would have run at some point in October of 2015. Plaintiff asserts that she filed a timely Notice on January 5, 2015. (Doc. 34 at 8). There is no evidence in the record to support this claim. The only Notice present in the record—and Plaintiff does not contend that more exist—is the January 5, 2015, Notice filed against "Maricopa County And/Or Maricopa County Sheriff." (Doc. 15-1 at 2). The fact that the Notice fails to identify even a single individual responsible for the allegedly tortious or unconstitutional actions cripples any argument that a timely Notice was served on the aforementioned Defendants.

Moreover, even if the Court were to consider this as a Notice served on the individual employee Defendants, the Arizona Court of Appeals has held that Plaintiff's efforts are insufficient. In *Harris*, the plaintiff served a Notice on Cochise County, and the Notice referred to an individual defendant "as the statutory agent," but failed to refer to her at all in the body of the Notice, and did not make any demand for money or settlement upon her. 160 P.3d at 230. Rather, the body of the Notice "repeatedly refer[ed] to 'CHS officials,' but d[id] not once name [the individual]." *Id.* Thus, "nothing exist[ed] in the notice that would have alerted the [individual] to the fact that a claim was being asserted against her," and the "most she could expect to glean from this notice is that as [the entity's] statutory agent, she must receive process for it and forward it to the principal." *Id.* The instant action is nearly identical, except Plaintiff failed to name any of the individual employee Defendants as "statutory agents" in the Notice. It follows that even accepting Plaintiff's efforts to date, they fail as a matter of law.[5]

---

[5] Plaintiff also makes no attempt to argue that the Notice was furnished on an "agent authorized by appointment or by law to receive service of process." Ariz. R. Civ. P. 4.1(d); *Shakur v. Schriro*, 2011 Ariz. App. Unpub. LEXIS 839, at *9 (Ariz. Ct. App.

1        In sum, the record establishes that Plaintiff failed to serve a Notice on the

2    individually named employee Defendants. Plaintiff cannot rely on "excusable neglect," as

3    the doctrine no longer relieves a plaintiff of compliance. *See Lee v. State*, 182 P.3d 1169,

4    1179 (Ariz. 2008) (noting that the Arizona legislature terminated this exception when it

5    amended the notice of claim statute). "Any claim which is not filed within one hundred

6    eighty days after the cause of action accrues is barred and no action may be maintained

7    thereon." *Crum*, 922 P.2d at 317 (citing A.R.S. § 12-821.01). Strict compliance is

8    mandatory. *Simon*, 234 P.3d at 629 (citation omitted). Plaintiff has failed to comply, and

9    her state law claims against Defendants Alvarez, Cormier, Garcia, Hansen, Hewitt,

10   Hovanec, Huber, Johnson, Smith and Wade are therefore barred.

11

12   **C.     The Validity of Plaintiff's Pleaded § 1983 Claims**[6]

13       Turning to Plaintiff's federal claims, Defendants assert that Plaintiff's § 1983

14   claims against Defendants Cormier, Garcia, Hewitt, Johnson, Smith, and Wade must be

15   dismissed for failure to state a plausible claim of relief. (Doc. 15 at 4-8). "Jail officials

16   have a duty to protect inmates from violence at the hands of other inmates." *Murphy*,

17   2006 U.S. Dist. LEXIS 63732, at *16 (citing *Hearns v. Terhune*, 413 F.3d 1036, 1040

18   (9th Cir. 2005)). The failure of jailers to protect the inmate population from the attacks by

19   other inmates may result in a violation of the victim's constitutional rights where "(1) the

20   deprivation alleged is 'objectively, sufficiently serious' and (2) the prison officials had a

21   _____

22   June 21, 2011). To qualify as an agent to accept service, an attorney must "appear . . .
     authorized, either expressly or impliedly, to receive service of process for his client."

23   *Kline v. Kline*, 212 P.3d 902, 908 (Ariz. Ct. App. 2009) (citation omitted). But even if

24   Plaintiff had raised this argument, it would fail in light of *Harris*, 160 P.3d at 230.

25       [6] At oral argument held on July 20, 2016, Plaintiff conceded that the Court would
     be "within its rights" to find that the TAC failed to allege a facially plausible claim

26   against Defendants Cormier, Garcia, Hewitt, Johnson, Smith, and Wade, and asked that
     they be dismissed without prejudice from the matter. Even accepting Plaintiff's

27   concession of the issue, in the interest of preserving a full and clear record of the entirety
     of this matter, the Court has analyzed the TAC's claims against the aforementioned

28   Defendants under Rule 8.

'sufficiently culpable state of mind,' acting with deliberate indifference." *Hearns*, 413 F.3d at 1040 (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). "Deliberate indifference is a high legal standard," higher than negligence, *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2004) (citation omitted), and even gross negligence. *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990). But it is "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.'" *Hearns*, 413 F.3d at 1040 (quoting *Farmer*, 511 U.S. at 835) (alterations omitted).

Plaintiff's opposition brief to the pending motion includes a number of factual assertions not contained in the TAC. (Doc. 34 at 2-4, 5). The Court may not, and will not consider them in its analysis. *Frenzel v. Aliphcom*, 76 F. Supp. 3d 999, 1009 (N.D. Cal. 2014) (citations omitted) (it is "axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss"). The Court's review of the facts will be restricted to those pleaded in the TAC.

### 1.    Defendant Garcia

The TAC names Defendant Deputy Sheriff Sergeant Garcia as an "employee[] of the Maricopa County Sheriff's Office, (Doc. 1 at 3 ¶ 7), and alleges that he was "on duty on July 9, 2014[,] at the 4th Avenue Jail." (*Id.* at 5 ¶ 15). Beyond these two instances, the TAC is bereft of any factual allegations relating to Defendant Garcia. Plaintiff simply asserts that "[t]he wrongful conduct of [D]efendants, and each of them, as alleged herein under color of State law, constitute violations of the United States Constitution . . . ." (*Id.* at 20 ¶ 107). Plaintiff's theory of recovery centers on Defendants' failure to protect Daughtry by placing Bates in the same cell as Daughtry.[7] None of the pleaded facts in the

---

[7] The TAC makes no claim that Garcia was in a position to set any kind of policy, procedure, or process. It also makes no claim that Garcia could, and failed to undertake some act with respect to providing appropriate medical and psychiatric care to Daughtry which would have precluded Daughtry from being placed in a jail cell with Defendant Bates. Thus, the Court focuses on Garcia's role in Bates being placed in Daughtry's cell

TAC place Defendant Garcia anywhere near this action, much less allege that Garcia made the decision to place Bates in Daughtry's cell, that he participated in placing Bates in Daughtry's cell, or that he knew Bates had been placed in the cell and failed to act. In sum, taking all pleaded facts in the TAC as true, and reading them in the light most favorable to Plaintiff, the TAC fails to allege a plausible claim of relief against Defendant Garcia.

Plaintiff's brief opposes the motion on two grounds.[8] Plaintiff first argues that "under well-established Ninth Circuit case law, each individual that participates in a group-based violation of a constitutional right is responsible for the harm caused by the violation." (Doc. 34 at 6). But "[a]n officer's liability under section 1983 is predicated on his 'integral participation' in the alleged violation" which requires "some fundamental involvement in the conduct that allegedly caused the violation." *Blankenhorn v. City of Orange*, 485 F.3d 463, 481 n.12 (9th Cir. 2007) (quoting *Chuman v. Wright*, 76 F.3d 292, 294-95 (9th Cir. 1996)). Here, the pleaded facts fail to even suggest that Defendant Garcia was in the vicinity of the alleged violations, and fail to establish that Defendant Garcia was an integral participant in the actions that led to Daughtry's death.

Plaintiff's brief next argues that she is at an "informational disadvantage," and that dismissing Defendant Garcia at this stage, without discovery, "would be premature in light of . . . longstanding" doctrine. (Doc. 34 at 6). Plaintiff relies on *Alston v. Parker*, 363 F.3d 229, 233 n.6 (3d Cir. 2004), in part,[9] a case in which the Third Circuit discussed

---

on July 9, 2014.

[8] Plaintiff opposes Defendants' motion in general on these two grounds. The Court has specifically addressed them in response to Defendants' assertion that the TAC fails to state a plausible claim against Defendant Garcia. With respect to the remaining Defendants, the Court does not specifically address Plaintiff's "group-based violation" and "informational disadvantage" arguments. The Court does, however, note that its analysis pertaining to Defendant Garcia applies to each Defendant that follows. In short, Plaintiff's arguments are not persuasive.

[9] Plaintiff's argument leads with citation to *Colburn v. Upper Darby Township*, 838 F.2d 663, 667 (3d Cir. 1988). In *Colburn*, the Third Circuit, discussed the efforts of

1   the no longer viable "no set of facts" pleading standard, noting that a plaintiff "need not

2   plead facts" but "only make out a claim upon which relief can be granted." *Id.* The Court

3   went on to recognize that in certain cases, pro se prisoners pursuing civil rights actions

4   may need discovery to determine "identities and roles of relevant actors" as "owing to

5   their incarceration or institutionalization, [they are] unable to conduct pre-trial

6   investigation to fill in the gaps." *Id.*

7          The Court finds that no informational disadvantage exists that is substantial

8   enough to justify leniency with respect to Rule 8's pleading standards. Unlike the

9   plaintiff in *Alston*, Plaintiff here has been represented by counsel throughout this matter.

10   Moreover, Plaintiff's own opposition asserts that she "could not have known of the

11   individual Defendants' conduct until April of 215, when Defendants finally released the

12   investigation" they conducted to Plaintiff, (Doc. 34 at 10), nearly eight months prior to

13   filing the TAC. Finally, the court in *Alston* made it clear that its focus was to address the

14   institutional barriers that exist for pro se prisoners who do not have access to counsel and

15   due to their own incarceration, cannot undertake "a pre-trial investigation to fill in the

16   gaps." 363 F.3d at 233 n.6.  But even assuming Plaintiff is at a sufficient "informational

17   disadvantage," this Court has found that such plaintiffs are entitled to "some benefit of

18   the doubt to go along with the specific facts [the complaint] has pled." *Hamblen v.*

19   *Diamante Crossroads Plaza*, *LLC*, No. CV 08-0561-PHX-JAT, 2009 U.S. Dist. LEXIS

20

21   an administratrix to plead sufficient facts to survive a Rule 12(b)(6) motion to dismiss.
     The court found that "[o]ne of the circumstances to be considered is whether the plaintiff
22   is in a position to know or acquire the relevant factual details," taking special
     consideration of the fact that "the results of [the] defendants' investigations into the
23   incident [we]re apparently not a matter of public record." *Id.* at 667. Here, Plaintiff has
     not alleged or asserted that Defendants' investigation was not released to her. And
24   previous filings by Plaintiff have acknowledged that counsel was given the results of
     Defendants' investigation in April of 2015. (Doc. 34 at 9). Further, elements of the TAC
25   are clearly drawn from Defendants' efforts to investigate the actions that led to
     Daughtry's death. Thus, even taking into consideration Plaintiff's "position to know or
26   acquire the relevant factual details," the Court finds that she is not at such an
     informational disadvantage so as to excuse the failure to allege a plausible claim for relief
27   against Defendant Garcia.

28

26191, at *6 (D. Ariz. March 30, 2009) (quoting *United Technologies Corp. v. Mazer*, 556 F.3d 1260, 1273 (11th Cir. 2009)). Giving Plaintiff "some benefit of the doubt," the TAC pleads insufficient facts to state a plausible claim of relief with respect to Defendant Garcia, who appears nowhere in the pleaded facts, save for being named as an employee who was at the 4th Avenue Jail on July 9, 2014. Plaintiff's § 1983 claim against Defendant Garcia must be dismissed.

### 2.    Defendant Smith

The TAC alleges that Defendant Lt. B. Smith was an employee of the Maricopa County Sheriff's Office and was on duty at the 4th Avenue Jail on July 9, 2014. (Doc. 12 at 3 ¶ 7, 5 ¶ 15). The TAC further alleges that at approximately 2200 hours, after Defendants Cormier and Wade had discovered an unresponsive Daughtry in his cell, Defendant Smith "ordered [Defendant] Hovanec to open the cell door of" Daughtry's cell. (*Id.* at 12 ¶ 69). This was after Defendant Bates had physically assaulted Daughtry, after Defendants Wade and Cormier "made a radio call for a man down" and after "[m]ultiple [o]fficers responded" to Daughtry's cell. (*Id.* at 12 ¶ 67-69). Defendant Smith is not mentioned again throughout the TAC.

Having reviewed the TAC, it is evident that no pleaded facts allege wrongdoing with respect to Bates being placed in Daughtry's cell on the part of Defendant Smith specifically. The only action he is expressly alleged of undertaking is ordering that Defendant Hovanec open the door to Daughtry's cell to render aid. The TAC does not plead that Defendant Smith took part in placing Bates in Daughtry's cell, that he directed any other officer to place Bates in Daughtry's cell,[10] or that he was aware that Bates had been placed in the cell and failed to act.

---

[10] The TAC alleges that Defendants Huber and Hansen transported Bates from the holding cell to Daughtry's at the direction of "Towers security," (Doc. 12 at 10 ¶ 48), but there are no supporting facts to infer that Defendant Smith was either part of "Towers security," or ordered "Towers security" to call for Bates to be moved.

Absent any pleaded facts suggesting that Defendant Smith was directly involved in the series of actions that led to Daughtry's death, it is possible—although the TAC certainly does not clearly allege—that Defendant Smith's rank as Lieutenant made him the highest ranking officer on-site on July 9, 2014, and that his status as the highest ranking officer makes him culpable for the series of actions that resulted in Daughtry's death. Having parsed through the language of Count Two, the Court has discerned several specific allegations: that Defendants were deliberately indifferent toward a serious safety hazard threatening Plaintiff where they "transferred a dangerous and psychologically unstable inmate . . . into a single cell unit with Daughtry who was also psychologically unstable," (Doc. 12 at 20 ¶ 107), that Defendants failed to "provide Daughtry with proper, reasonable, basic, and necessary psychiatric and medical treatment," (*id.* at 21 ¶ 108), and that Defendants "failed to provide a safe and healthy environment while Daughtry was detained at [the] 4th Avenue Jail." (*Id.* at 21 ¶ 111).

But even taking all pleaded facts as true, and reading them in the light most favorable to Plaintiff, the TAC fails to plead sufficient facts to plausibly establish that Defendant Smith was responsible for, had some active role in, or failed to redress any of the conclusory allegations set forth above. It is not sufficient under Rule 8 to generally plead, for example, that it was an unsafe and unhealthy environment that lacked "basic, and necessary psychiatric and medical treatment," and then fail to set forth any specific factual allegations to underpin such claims, all while failing to tie any of the conclusory claims to the individual Defendant in even a general sense.  More is required to plead a facially plausible claim that Defendant Smith was deliberately indifferent towards likely inmate violence that deprived Daughtry of a sufficiently serious constitutional right.

Finally, Count Two of the TAC alleges that certain Defendants are liable under § 1983 for setting and implementing unconstitutional protocols and policies, but these are specifically limited to allegations against Defendant Arpaio, (Doc. 12 at 19 ¶ 103), Defendant Maricopa County, (*id.* at 18 ¶ 101), and Defendant Alvarez. (*Id.* at 20 ¶ 104-105). Count Two does go on to generally allege that Defendants "knowingly and with

deliberate indifference, permitted the implementation of inappropriate de facto policies" that are constitutionally infirm. (Doc. 12 at 18 ¶ 102). But the TAC fails to assert—even in a cursory manner—which Defendants are responsible for implementing which of the nine allegedly unconstitutional "de facto policies" Plaintiff has set forth. Even assuming that Defendant Smith, possibly the highest ranking on-site officer on July 9, 2014, was responsible for setting "de facto policies," the nine alleged policies are simply recitations of legal conclusions. For example, the TAC pleads that Defendants engaged in "unconstitutionally cruel and unusual confinement" and that Defendants accepted "the use of unconstitutionally cruel and unusual confinement" and Defendants "fail[ed] to discipline or terminate jail personnel known to engage in the use of cruel and unusual confinement," and that Defendants "fail[ed] to adequately train and supervise jail personnel." (Doc. 12 at 19 ¶ 102). The TAC lists several additional alleged policies, but they suffer from the same deficiencies. They are conclusions that lack any underlying factual support.

The TAC fails to allege what constituted cruel and unusual confinement, it fails to allege which personnel engaged in the use of cruel and unusual confinement, and it fails to allege what actions by what Defendants form the basis of the failure to adequately train and supervise claim. The only two specific factual assertions that can form the basis of "de facto policies" are the decisions to place Defendant Bates in the same cell as Daughtry, and, perhaps, the confinement of Daughtry in a standard cell when he required specific psychiatric care and treatment. The TAC fails to plausibly allege that Defendant Smith had any role in either. In sum, the alleged policies—which, in theory, could possibly be implemented by Defendant Smith due to his possible position within the 4th Avenue Jail chain of command—amount to legal conclusions and do not allow Court to draw the inference that Defendant Smith enacted these unconstitutional "de facto policies."

Taking as true all pleaded facts in the TAC and viewing them in the light most favorable to Plaintiff, it fails to allege a plausible § 1983 claim against Defendant Smith.

1

2              **3.       Defendants Hewitt and Johnson**

3              The TAC alleges that Defendants Hewitt and Johnson were employees of the

4     Maricopa County Sheriff's Office and were on duty at the 4th Avenue Jail on July 9,

5     2014. (Doc. 12 at 3 ¶ 7, 4 ¶ 15). The TAC further alleges that Defendants Hewitt and

6     Johnson were the officers who encountered Defendant Bates in the "Sally Port," a

7     restricted area in the 4th Avenue Jail. (Doc. 12 at 9 ¶ 42). Defendants Hewitt and Johnson

8     told Bates that he was not allowed to be in the restricted area, and that he needed to return

9     to his cell. Bates did not comply, and after repeating their command to return to his cell,

10    Defendants Hewitt and Johnson handcuffed Bates and placed him in a holding tank until

11    "he could be moved to a cell." (*Id.* at 9-10 ¶ 42-46). Defendants Huber and Hansen, at the

12    direction of "Towers security," then transferred Bates from the holding tank to "the cell

13    that Daughtry was also housed in." (*Id.* at 10 ¶ 49). After Defendant Bates had been

14    transferred to Daughtry's cell, Defendants Hewitt and Johnson "brought Bates' personal

15    belongings to his cell," which Bates now shared with Daughtry. (*Id.* at 10 ¶ 50). These

16    allegations comprise the entirety of the claims against Defendants Hewitt and Johnson.

17             In light of Plaintiff's concession that the aforementioned factual allegations are

18    insufficient to make out a facially plausible claim of relief against Defendants Hewitt and

19    Johnson, the Court will grant Defendants' motion on this issue.

20

21             **4.       Defendants Cormier and Wade**

22             Defendants Cormier and Wade were employees of the Maricopa County Sheriff's

23    Office that they were on duty on July 9, 2014, and were assigned to the housing unit

24    where Daughtry was held. (Doc. 12 at 3 ¶ 7, 4 ¶ 15). The TAC goes on to allege that

25    exactly when Defendant Bates was placed into Daughtry's cell, Cormier and Wade were

26    "assigned to the housing unit" and "were passing out canteen." (*Id.* at 11 ¶ 56, 63). At

27    approximately 2200 hours on July 9, 2014, Defendant Hovanec instructed Defendants

28    "Wade and Cormier to stop canteen and start general headcount." (*Id.* at ¶ 63). As

Defendants Cormier and Wade were "conducting a headcount in [pod] 2B," they walked by the cell that Daughtry was in and "saw [D]efendant Bates standing over Daughtry who was unconscious and unresponsive and lying face down in a puddle of blood." (*Id.* at 12 ¶ 67). Defendant Cormier "made a radio call for a man down and requested for an AED (Automated External Defibrillator)." (*Id.*) Defendant Wade also "made a radio call to security control for a 'man down.'" (*Id.* at 11 ¶ 66). Defendants are not mentioned thereafter in the TAC.

Having reviewed the TAC, for the reasons state above, the Court finds that Plaintiff has pleaded insufficient factual allegations to allege a plausible claim against Defendants Cormier and Wade. No pleaded facts suggest that Defendants Cormier and Wade had any active role in placing Defendant Bates in Daughtry's cell. Nor does the TAC suggest that the Defendants were even aware that Bates had been placed in Daughtry's cell until they discovered Daughtry unconscious on the floor of his cell when they were "conducting a headcount." And the TAC fails to allege that Defendants Cormier and Wade had some role in directing, overseeing, or ordering Bates' transfer to Daughtry's cell. Finally, the TAC fails to allege sufficient facts to plausibly assert that Defendants Cormier and Wade had some role in setting "de facto policies" or procedures that led to Daughtry's death. The pleaded facts, taken as true, establish that Defendants Cormier and Wade were on duty the night of Daughtry's death, had no role in bringing about his death, and took action upon discovering Daughtry to alert on-site officers that there was a "man down" and that immediate medical attention was necessary. (Doc. 12 at 11-12 ¶¶66-67). In sum, the TAC fails to plausibly allege that Defendants Cormier and Wade were deliberately indifferent towards the deprivation of Plaintiff's sufficiently serious rights at the hands of another inmate, or that Defendants Cormier and Wade failed in their obligation to keep Daughtry safe from the likely attack of another inmate. *Farmer*, 511 U.S. at 828. Accordingly, the § 1983 claims against Defendants Cormier and Wade must be dismissed.

**IV.**

In light of the Court's ruling on Plaintiff's Rule 12(b)(6) motion, the Court must address which of the TAC's claims remain. As discussed *supra*, Defendant Bates is dismissed for failure to serve, Plaintiff's negligence claim must be dismissed, and all of Plaintiff's state law claims against Defendants Alvarez, Cormier, Garcia, Hansen, Hewitt, Hovanec, Huber, Johnson, Smith, and Wade must be dismissed for failure to comply with A.R.S. § 12-821.01.

It is clear that any and all state law claims against the aforementioned individual employee Defendants are barred. *See Harris*, 160 P.3d at 230 (quoting *Salerno*, 115 P.3d at 628) (emphasis in original) (noting that failure to comply "'bars *any* claim' against the entity or employee"). Defendants assert that Plaintiff's failure to comply with Arizona's notice of claim statute also bars any and all claims against Defendants Arpaio and Maricopa County under a theory of respondeat superior/vicarious liability. (Doc. 38 at 7-8). The Court agrees.

"Under Arizona law, 'a dismissal with prejudice is an adjudication on the merits of the case.'" *Nixon v. Mohave County*, No. 3:14-CV-8031-HRH, 2014 U.S. Dist. LEXIS 116009, at *6 (D. Ariz. Aug. 20, 2014) (quoting *De Graff v. Smith*, 157 P.2d 342, 345 (Ariz. 1945)); *see also Orlando v. City of Mesa*, 2009 Ariz. App. Unpub. LEXIS 143, at *3 (Ariz. Ct. App. March 5, 2009) ("Arizona has long recognized that a dismissal with prejudice of a plaintiff's claims against an employee constitutes an adjudication on the merits."). Failure to comply with the notice of claim statute results in dismissal of any and all claims against that entity or individual, with prejudice. *See A. Miner Contr., Inc. v. City of Flagstaff*, 2015 Ariz. App. Unpub. LEXIS 1200, at *1-6 (Ariz. Ct. App. Oct. 1, 2015) (affirming the superior court's dismissal of a plaintiff's "complaint with prejudice for failure to comply with Arizona's notice of claim statute"); *see also Merrick v. Ryan*, 2015 Ariz. App. Unpub. LEXIS 1173, at *1 (Ariz. Ct. App. Sept. 24, 2015) (same); *Best v. State*, 2014 Ariz. App. Unpub. LEXIS 784, at *1 (Ariz. Ct. App. June 17, 2014) (same); *Falcon*, 144 P.3d at 1256 (citing *Salerno*, 115 P.3d at 629) ("If a notice of claim

is not properly filed within the statutory time limit, a plaintiff's claim is barred by statute.").

Where claims against an individual employee—or employees—are "dismissed with prejudice, then the employer can never be found vicariously liable." *Nixon*, 2014 U.S. Dist. LEXIS 116009, at *6 (citation omitted); *see also Law v. Verde Valley Med. Ctr.*, 170 P.3d 701, 705 (Ariz. Ct. App. 2007) (noting that when a judgment on the merits, including a dismissal with prejudice, is entered in favor of an employee, "there is no fault to impute and the party potentially vicariously liable" is not responsible).

Here, Plaintiff's state law claims against the individual employee Defendants have been dismissed, with prejudice, due to Plaintiff's failure to comply with the notice of claim statute. Under Arizona law, Defendants Maricopa County and Arpaio can never be held vicariously liable for their employees' official conduct. *See Orlando*, 2009 Ariz. App. Unpub. LEXIS 143, at *3 (if the claims against the employee are dismissed with prejudice, then "an action against the employer based solely upon the doctrine of vicarious liability" is barred). To allow Plaintiff to "continue to assert claims for vicarious liability against the County" and Defendant Arpaio, even in light of the dismissal with prejudice of the individual Defendants, then Plaintiff's "failure to comply with the Notice statute as to [the individual Defendants] would be excused, which would not be consistent with Arizona law that treats the Notice statute as 'mandatory.'" *Nixon*, 2014 U.S. LEXIS 116009, at *6-7 (quoting *Salerno*, 115 P.3d at 628). As Plaintiff cannot cure the problem with her state law claims against Defendants Maricopa County and Arpaio premised on a theory of respondeat superior/vicarious liability, they must be dismissed as well.[11]

Likewise, a 42 U.S.C. § 1983 claim cannot serve as the basis for a respondeat

---

[11] The Court is not persuaded by Plaintiff's argument that *Johnson*, 763 P.2d at 1385, mandates that the respondeat superior claims be allowed to proceed. *Johnson* analyzed the predecessor statute to A.R.S. § 821.01, and held that the notice of claim statute required that a prospective plaintiff furnish a Notice on both the employer and the employee. *Id.* at 1384.

superior/vicarious liability claim, and must be dismissed as well. *Strickler v. Arpaio*, No. CV-12-1344-PHX-GMS, 2012 U.S. Dist. LEXIS 117727, at *14 (D. Ariz. Aug. 21, 2012); *Roundtree v. Adams*, 2005 U.S. Dist. LEXIS 40517, at *23 (E.D. Cal. Dec. 1, 2005) (citing *Polk County v. Dodson*, 454 U.S. 312, 325 (1981)).

Finally, the TAC's § 1983 claims alleged against Defendants Cormier, Garcia, Hewitt, Johnson, Smith, and Wade must be dismissed for failure to allege a facially plausible claim of relief.

**V.**

Accordingly,

/

/

/

/

/

/

/

/

/

/

/

/

/

/

/

/

/

/

1    **IT IS ORDERED** that Defendants' Motion to Dismiss, (Doc 15), is **GRANTED**.

2    **IT IS FURTHER ORDERED** that Count One's claim for negligence is

3    **DISMISSED**.

4    **IT IS FURTHER ORDERED** that Defendant Ryan Bates is dismissed from this

5    matter for failure to execute service of process under Fed. R. Civ. P. 4(m).

6    **IT IS FURTHER ORDERED** that any and all state law claims against

7    Defendants Alvarez, Cormier, Garcia, Hansen, Hewitt, Hovanec, Huber, Johnson, Smith,

8    and Wade are **DISMISSED**.

9    **IT IS FURTHER ORDERED** that any claims against Defendants Arpaio and

10   Maricopa County based on a theory of respondeat superior/vicarious liability are

11   **DISMISSED**.

12   **IT IS FURTHER ORDERED** that Count Two, with respect to Defendants

13   Cormier, Garcia, Hewitt, Johnson, Smith, and Wade is **DISMISSED**.

14   **IT IS FURTHER ORDERED** that with no viable claims against them remaining

15   in the TAC, Defendants Cormier, Garcia, Hewitt, Johnson, Smith, and Wade are

16   **DISMISSED** from this matter.

17   Dated this 25th day of July, 2016.

James A. Teilborg
Senior United States District Judge