**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Shari Ferreira, et al., | No. CV-15-01845-PHX-JAT |
| Plaintiffs, | **ORDER** |
| v. | |
| Joseph M Arpaio, et al., | |
| Defendants. | |

Pending before the Court is Defendants' Motion to Exclude Plaintiffs' Expert, Bhushan S. Agharkar, M.D. (Doc. 212), filed on July 31, 2017. Having considered both parties' briefs, the Court now rules on the motion.

**I.     BACKGROUND**

The Court need not again set forth a full recitation of the facts underlying this matter. For purposes of adjudicating Defendants' pending Motion to Exclude Dr. Agharkar, a brief recital of the following facts, taken from Plaintiff Shari Ferreira's Third Amended Complaint is sufficient. Plaintiff brought this civil rights action on behalf of decedent Zachary Daughtry ("Daughtry") in her capacity as personal representative of the estate. (Doc. 12 at 1). Daughtry was arrested in December of 2013 and booked into the 4th Avenue Jail complex. (*Id.* at 8). On July 9, 2014, Defendant Ryan Bates ("Bates")[1] was placed in a cell with Daughtry. (*Id.* at 9). Officers passed their cell later that evening

---

[1] Bates has since been dismissed from this matter as per this Court's Order on Motion to Dismiss Party (Doc. 76).

to find Bates standing over Daughtry, who was unresponsive and laying in a puddle of blood. (*Id.* at 12). Daughtry ultimately passed away from his injuries on July 20, 2014. (*Id.* at 15).

On February 7, 2017, Defendants disclosed the report of their psychiatric expert, Dr. Joseph Penn. Subsequently, Plaintiffs disclosed the report of their rebuttal expert, Dr. Agharkar on March 21, 2017. Defendants filed a Motion to Exclude Dr. Agharkar. (Doc. 212). Plaintiffs filed a Response on September 5, 2017, (Doc. 223), to which Defendants filed a Reply on September 12, 2017. (Doc. 227).

## II. LEGAL STANDARDS

Defendants move to exclude Plaintiff's psychiatric rebuttal expert, Dr. Bhushan S. Agharkar. Defendants contend that Dr. Agharkar must be excluded because (1) his expert report fails to comply with Federal Rule of Civil Procedure ("FRCP") 26, (2) his testimony is irrelevant and cumulative under Federal Rule of Evidence ("FRE") 403, and (3) his testimony is unreliable and irrelevant under FRE 702. The Court will discuss each of the standards under these rules in turn.

### A. Federal Rule of Civil Procedure 26

FRCP 26 requires that if a party desires to have an expert present expert testimony, the party must disclose both the expert and provide a written report outlining information about the expert and her testimony. Fed. R. Civ. P. 26(a)(2)(A)–(B). The Rule requires, in relevant part, that the expert report must include:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
>
> (ii) the facts or data considered by the witness in forming them . . . .

Fed. R. Civ. P. 26(a)(2)(B).

#### 1. Basis and Reasons

"Bald conclusions, brief statements of ultimate conclusions with no explanation of the basis and reasons therefore, or reports omitting a statement of how the facts support

the conclusions do not satisfy Rule 26(a)(2)(B)." *Izzo v. Wal-Mart Stores, Inc.*, No. 2:15-CV-01142-JAD-NJK, 2016 WL 593532, at *2 (D. Nev. Feb. 11, 2016) (citations omitted). Exclusion of expert testimony "is an appropriate remedy for failing to fulfill the required disclosure requirements of Rule 26(a)." *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001). However, questions related to the factual basis of an expert's testimony go "to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination." *Children's Broadcasting Corp. v. Walt Disney Co.*, 357 F.3d 860, 865 (9th Cir. 2004).

### 2. Role of a Rebuttal Expert

FRCP 26 also allows parties to propose rebuttal experts whose testimony "is intended solely to contradict or rebut evidence." Fed. R. Civ. P. 26(a)(2)(D)(ii). For an expert to classify as a rebuttal expert, the expert must "address the same subject matter identified by the initial expert." *LaFlamme v. Safeway, Inc.*, 3:09-cv-00514, 2010 WL 3522378–ECR–VPC, at *4–5 (D. Nev. Sept. 2, 2010) (citing *Lindner v. Meadow Gold Diaries, Inc.*, 249 F.R.D. 625, 636 (D. Hawaii 2008)). Rebuttal testimony is permitted to "question the assumptions and methods" of an opposing expert but may not present "new facts" or "novel argument." *LaFlamme*, 2010 WL 3522378, at *8. A district court has "'broad discretion in determining whether to admit or exclude expert testimony' and no per se rule exists that new expert testimony is inappropriate rebuttal testimony." *Little v. Washington Metro. Area Transit Auth.*, 249 F. Supp. 3d 394, 416 (D.D.C. 2017) (citing *United States v. Gatling*, 96 F.3d 1511, 1523 (D.C. Cir. 1996)).

### B. Federal Rule of Evidence 403

FRE 403 allows courts to exclude relevant evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. FRE 403 "does not prohibit the introduction of cumulative evidence; rather, it merely permits courts to exclude

cumulative evidence when it has little incremental value." *Cantu v. United States*, No. CV 14-00219 MMM (JCGx), 2015 WL 12743881, at *17 (C.D. Cal. Apr. 6, 2015) (citing *United States v. Miguel*, 87 Fed. Appx. 67, 68 (9th Cir. 2004)).

Additionally, "the mere presence of overlap, reference to another expert's report or a similar conclusion . . . does not render an expert report unnecessarily 'cumulative' pursuant to FRE 403." *Montgomery v. Wal-Mart Stores, Inc.*, 12CV3057-AJB (DHB), 2015 WL 11233382, at *4 (S.D. Cal. Sept. 24, 2015) (citing *Banks v. United States*, 93 Fed. Cl. 41, 51 (Fed. Cl. May 4, 2010)). The Court has discretion in determining when cumulative evidence becomes "needlessly" cumulative and should therefore be excludable. *United States v. Skillman*, 922 F.2d 1370, 1374 (9th Cir. 1990). As such, "even cumulative evidence is not necessarily excludable under Rule 403—evidence must be 'needless[ly] cumulative' before its admission by the district court amounts to an abuse of discretion." *United States v. Taylor*, No. 96-30343, 1997 WL 661153 (9th Cir. 1997) (quoting *Skillman*, 922 F.2d at 1374).

### C. Federal Rule of Evidence 702 and *Daubert*

In addition to FRCP 26 and FRE 403 concerns, when either party attempts to offer expert testimony through an expert witness, the Court "must determine whether the expert witness is qualified and has specialized knowledge that will assist a trier of fact to understand the evidence or to determine a fact in issue." *McKendall v. Crown Control Corp.*, 122 F.3d 803, 805 (9th Cir. 1997) (citing Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 591 (1993) ("*Daubert I*")). The Court's analysis is made by comparing the proposed expert testimony to the requirements of FRE 702. FRE 702 provides that:

> A witness who is qualified by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> a. the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> b. the testimony is based on sufficient facts or data;
> c. the testimony is the product of reliable principles and

- 4 -

> methods; and
> d. the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

The United States Supreme Court and the Ninth Circuit Court of Appeals have issued opinions interpreting FRE 702 that will help guide this Court's analysis. *See Daubert I*; *see also Daubert v. Merrell Dow Pharmaceuticals*, 43 F.3d 1311 (9th Cir. 1995) ("*Daubert II*"). According to *Daubert I*, the Court has broad discretionary powers in determining whether or not a proposed expert is qualified under Rule 702 by "knowledge, skill, experience, training or education." *Daubert I* at 591; *see also Daubert II* at 1315. The Court must also decide whether the proposed subject matter of the expert opinion correctly concerns "scientific, technical, or other specialized knowledge" under Rule 702. *McKendall*, 122 F.3d at 806. Finally, the Court must ascertain "whether the testimony is helpful to the trier of fact, i.e., whether it rests on a reliable foundation and is relevant to the facts of the case." *Id.* (citing *Bogosian v. Mercedes-Benz of North America, Inc.*, 104 F.3d 472, 476 (1st Cir. 1997); Fed. R. Evid. 702).

The Supreme Court has charged district courts with acting as "gatekeepers" to ensure that all scientific testimony and evidence admitted is both relevant and reliable. *Hall v. Baxter Healthcare Corp.*, 947 F. Supp. 1387, 1396 (D. Or. 1996). The task before this Court, then, is two-pronged. First, the Court must ensure that the proposed testimony exemplifies "scientific knowledge," constitutes "good science," and was "derived by the scientific method." *Id.* (citing *Daubert II*, 43 F.3d at 1316). Second, the Court must ensure that the testimony is "relevant to the task at hand" in that it "logically advances a material aspect of the proposing party's case." *Daubert II*, 43 F.3d at 1315 (quoting *Daubert I*, 509 U.S. at 597).

### 1. Reliability

Both *Daubert I* and *Daubert II* list factors that the courts can use in deciding the first prong, whether the expert testimony is scientifically valid and reliable.

*Hall*, 947 F. Supp. at 1396. These factors include:

1. Whether the theory or technique employed by the expert is generally accepted in the scientific community;

2. Whether the theory has been subjected to peer review and publication;

3. Whether the theory can be and has been tested;

4. Whether the known or potential rate of error is acceptable; and

5. Whether the experts are proposing to testify about matters growing naturally or directly out of research, or whether they have developed their opinions expressly for purposes of testifying.

*Id.* (citing *Daubert I*, 509 U.S. at 593–94 (first four factors); *Daubert II*, 43 F.3d at 1316–17 (adding fifth factor)).

The list is illustrative, not exhaustive. *Daubert II*, 43 F.3d at 1317. In *Kumho Tire v. Carmichael*, the Supreme Court recognized that all expert theories may not fit neatly into the five factors carved out in *Daubert I* and *Daubert II*, and as such the test for reliability must be "flexible." 526 U.S. 137, 141 (1999). This is especially the case when the expert is testifying to "technical" or "other specialized knowledge" as opposed to scientific testimony. *Id.* at 148 (citing Fed. R. Evid. 702). As such, the Court may consider the five factors previously mentioned, but ultimately it must determine whether the testimony has "a reliable basis in the knowledge and experience of the relevant discipline." *Id.* at 149 (citing *Daubert I* at 592).

### 2. Relevance and Fit

In addition to analyzing the reliability of the expert's testimony, the Court has a duty to ensure that the testimony is "relevant to the task at hand" in that it "logically advances a material aspect of the proposing party's case." *Daubert II*, 43 F.3d at 1315 (quoting *Daubert I*, 509 U.S. at 597). Put another way, an expert's testimony must be "facially helpful and relevant" in assisting the trier of fact evaluate the evidence.

*McKendall*, 122 F.3d at 807 (citing *Compton v. Subaru of America, Inc.*, 82 F.3d 1513, 1515 (10th Cir. 1996). Once again, the Court must exclude the testimony if it does not "fit" the matters at issue in the case. *Daubert I*, 509 U.S. at 591.

**III. ANALYSIS**

As mentioned previously, Defendants move to exclude Plaintiffs' rebuttal expert Dr. Agharkar under FRCP 26, FRE 403, and FRE 702. The Court will address each argument in turn.

### A. Federal Rule of Civil Procedure 26

Defendants' challenge to Dr. Agharkar under FRCP 26 is two-fold. First, Defendants challenge whether Dr. Agharkar's report complies with FRCP 26(a)(2)(B)(i), which requires his report provide the "basis and reasons" for his opinions. (Doc. 212 at 3); *see also* Fed. R. Civ. P. 26(a)(2)(B)(i) (requiring that an expert's report must contain "a complete statement of all opinions the witness will express and the basis and reasons for them."). Second, Defendants argue that Dr. Agharkar is not a legitimate rebuttal expert under FRCP 26(a)(2)(D)(ii), and, as such, Plaintiffs' disclosure of Dr. Agharkar was untimely and improper. (Doc. 212 at 3–5); *see also* Fed. R. Civ. P. 26(a)(2)(D)(ii).

Plaintiff responds by pointing to the thousands of pages of documents that Dr. Agharkar reviewed related to the case, which are listed in his report. (*See* Doc. 223 at 2–4). Plaintiff also notes that Dr. Agharkar had the benefit of clinically interviewing Bates twice. (*Id.* at 2, 5–6). To counter Defendants' rebuttal expert claim, Plaintiff provides a bullet point comparison which delineates the main points of Dr. Agharkar's report and the specific opinions of Dr. Penn that Dr. Agharkar rebuts. (*Id.* at 6–8). Because he is a proper rebuttal expert, Plaintiff argues, his disclosure was timely under the rebuttal expert deadline. (*Id.* at 8–9).

#### 1. Basis and Reasons

Defendants first contend that Dr. Agharkar's report failed to comply with FRCP 26(a)(2)(B)(i) because it did not provide the "basis and reasons" for his opinions.

(Doc. 212 at 3). In Dr. Agharkar's report, he lists at least 24 separate documents, containing thousands of pages of related material, which he reviewed before providing his opinion in this case. (Doc. 212-1 at 9–10). In addition to these documents, Dr. Agharkar had the opportunity to interview Bates in a clinical setting twice since the incident occurred. (*Id.* at 2). Dr. Agharkar evaluated these sources of information using his knowledge and experience and listed his conclusions in his expert report. (*Id.* at 5–7). The Court finds that the documents reviewed by Dr. Agharkar as well as his personal interviews of Bates form an adequate basis for his opinions, and he lists these sources of information in his report. (Doc. 212-1 at 2, 9–10). Accordingly, Dr. Agharkar's report, at a minimum, satisfies the requirements of FRCP 26(a)(2)(B)(i).

### 2. Role of a Rebuttal Expert

Defendants further contend that Dr. Agharkar is not a legitimate rebuttal expert, but rather a "late-disclosed affirmative expert masquerading as a rebuttal expert." (Doc. 212 at 4). In their Response, Plaintiffs list several points on which Dr. Agharkar's report purports to rebut the findings of defense expert Dr. Penn. (*See* Doc. 223 at 6–8). Specifically, Dr. Agharkar disputes Dr. Penn's methodology and provides directly contradictory opinions in concluding that Bates and Daughtry were not malingering, that they lacked requisite behavioral and communication skills, and that jail staff members acted with deliberate indifference in failing to accurately identify or treat the inmates' psychiatric conditions. (*Id.* at 6–8 (citing Doc 212-1 at 4–7)). These disputed issues highlight several areas in which Dr. Agharkar's report attempts to rebut the methodology and opinions of Dr. Penn on the same subject matter identified by Dr. Penn. *See LaFlamme*, 2010 WL 3522378, at *4–5.

Defendants concede that "Dr. Agharkar refers to Dr. Penn's report, and remarks on it," but fail to set out any specific "new arguments and legal theories" that Dr. Agharkar's report provides independent of his critique of Dr. Penn's report. (Doc. 212 at 4; Doc. 227 at 3). Even if Dr. Agharkar did advance new methodologies and alternative theories in his report, "[d]istrict courts routinely permit new experts for rebuttal purposes

and permit rebuttal experts to use new methodologies to rebut the opinions of the opposing expert." *Little*, 249 F. Supp. 3d at 416 (citations omitted). Accordingly, the Court finds that Dr. Agharkar is not improperly classified as a rebuttal expert. As such, Plaintiff's disclosure of Dr. Agharkar's expert rebuttal report to Defendants on March 21, 2017 was timely. (*See* Doc. 154; Doc. 162).[2]

It seems obvious that if even one of Dr. Agharkar's opinions is a proper rebuttal opinion, he is not improperly classified as a rebuttal expert. It is possible, therefore, that although Dr. Agharkar is classified as a rebuttal expert, not all of his opinions could survive an appropriate objection at trial.

### B. Federal Rule of Evidence 403

Next, Defendants argue that Dr. Agharkar's testimony is irrelevant and cumulative under FRE 403. First, Defendants maintain that Dr. Agharkar's testimony is irrelevant as it relates to Bates's competency to stand trial in the criminal case stemming from Bates's encounter with Daughtry. (Doc. 212 at 5). While this may be true, the opinions provided by Dr. Agharkar in his report are provided specifically in the context of this civil case (Doc. 223 at 9 (citing Doc. 212-1)). Even though Dr. Agharkar interviewed Bates pursuant to the February 8, 2017 Rule 11 hearing in Bates's criminal case, Dr. Agharkar's report directly relates to Dr. Penn's conclusions regarding Bates and Daughtry, as well as the conditions of their confinement by Defendants. (*See* Doc. 212-1 at 3–6). Should Plaintiff attempt to introduce irrelevant evidence specific to the Rule 11 context at trial, Defendants may object at trial, but Dr. Agharkar's report is appropriately tailored to the gross negligence and failure to protect claims remaining in this case.

Next, Defendants argue that Dr. Agharkar's testimony is cumulative because Dr. Agharkar "will provide identical opinions and testimony as Plaintiff's other mental health

---

[2] Defendants argue that the disclosure of Dr. Agharkar was untimely because it occurred after the initial expert disclosure deadline of November 21, 2016. However, that deadline did not apply to rebuttal expert reports, for which the deadline was March 21, 2017. (Doc. 154). Plaintiffs met this deadline with regard to the disclosure of Dr. Agharkar and his rebuttal report. (Doc. 162).

expert, Dr. Stewart."[3] (*See* Doc. 212 at 5–6). Plaintiffs, however, clearly outline distinctions between Dr. Stewart and Dr. Agharkar's reports. (*See* Doc. 223 at 9–11). For example, Dr. Agharkar offers opinion testimony on Bates's mental illness based on his own clinical interviews of him, which Dr. Stewart did not have the same opportunity to conduct. (Doc. 212-1 at 5–6). Dr. Agharkar also remarks on the importance of a face-to-face interview before providing a diagnosis of mental illness and criticized Dr. Penn's methodology in providing a diagnosis without first having a face-to-face interaction with Bates. (*Id.* at 5). Finally, Dr. Agharkar commented on Bates and Daughtry's inability to perform normal activities of daily living, contrary to Dr. Penn's assertions. (*Id.* at 7). These three topics, among others, are ones on which Dr. Agharkar opined but Dr. Stewart did not. Thus, Dr. Agharkar's opinions are far from "identical" with Dr. Stewart's opinions, as Defendants argue. (Doc. 212 at 5).

While there may be some overlap between the analysis and conclusions provided by Dr. Stewart and Dr. Agharkar, overlap alone is insufficient to render an expert report unnecessarily cumulative under FRE 403. *See Montgomery*, 2015 WL 11233382, at *4. Accordingly, the Court finds that Defendants' argument is overbroad and premature as Dr. Agharkar's testimony is not needlessly cumulative when viewed alongside that of Dr. Stewart at this stage.

### C. Federal Rule of Evidence 702 and *Daubert*

Defendants also argue that Dr. Agharkar's opinions are inadmissible under FRE 702 and *Daubert* because (1) his opinions are not reliable; and (2) his opinions are not relevant or helpful to a jury. (*See* Doc. 212 at 2). The Court will address each argument in turn.

#### 1. Reliability

Defendants contend that Dr. Agharkar's report is "conclusory and unsupported by the scientific methodology necessary to allow his opinions to reach the jury." (*Id.* at 6).

---

[3] Defendants separately move to exclude Plaintiff's expert Dr. Stewart (Doc. 213). As such, the Court will rule on that motion separately.

Defendants further argue that Defendant's opinions do not rest on proper investigative methodologies and supportive scholarship, but instead on "opinions he reached in Bates's underlying criminal case." (*Id.*). For these reasons, Defendants claim that Dr. Agharkar's opinions and report are unreliable.

Plaintiffs respond by arguing that Dr. Agharkar did in fact base his opinions on facts in the record, psychiatric concepts, and his own experience. (Doc. 223 at 12–13). Additionally, Plaintiffs point out that disputes over Dr. Agharkar's "credentials, about faults in methodology, or about a supposed lack of textual authority for an opinion go to the weight, not the admissibility, of the testimony." (*Id.* at 13 (citing *Kennedy v. Collagen Corp.*, 161 F.3d 1226, 1231 (9th Cir. 1998))). Ultimately, Plaintiffs argue that Dr. Agharkar's expertise, his review of pertinent documents, and his interviews of Bates make Dr. Agharkar's testimony and report reliable. (Doc. 223 at 12–13).

When evaluating the reliability of an expert's testimony, the Court must determine whether the testimony has "a reliable basis in the knowledge and experience of [the relevant] discipline." *Daubert I*, 509 U.S. at 592. When evaluating an expert such as Dr. Agharkar, it is proper for the Court to consider Dr. Agharkar's knowledge, skill, and experience as they are applied to his conclusions. *See Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1015–16 (9th Cir. 2004).

Plaintiffs offer Dr. Agharkar as a psychiatric rebuttal expert. Dr. Agharkar holds dual board certifications as a Diplomate of Adult Psychiatry and Forensic Psychiatry from the American Board of Psychiatry and Neurology. (Doc. 212-1 at 13). He is also a Distinguished Fellow of the American Psychiatric Association. (*Id.* at 16). Dr. Agharkar's training, experience, and professional accolades support Plaintiff's contention that his testimony possesses a reliable basis in the relevant field. The Court finds that Dr. Agharkar has more than the "minimal foundation of knowledge, skill and experience" to cross the threshold of expert qualification. *Heston v. City of Salinas*, 2017 WL 4754777 at *2 (N.D. Cal. Mar. 30, 2007) (citing *Hangarter*, 373 F.3d at 1015–16).

Dr. Agharkar's experience and training qualify him as long as the facts he relied

- 11 -

on exist. *See Guidroz-Brault v. Missouri Pacific Railroad Co.*, 254 F.3d 825 (9th Cir. 2001). Based on a thorough review of the record and Dr. Agharkar's report, the Court finds that Dr. Agharkar's conclusions and report are based on sufficient facts so as to be found reliable, satisfying the first prong of FRE 702.

### 2. Relevance and Fit

Defendants argue that Dr. Agharkar's opinions are also inadmissible because they are irrelevant to Plaintiff's failure to protect claim. (Doc. 212 at 6). Even if Daughtry and Bates's mental health treatment was relevant as Defendants claim, Dr. Agharkar's opinions stem from his interviews with Bates after the incident, and are thus "irrelevant to what [Bates's] mental health condition was on July 9, 2014." (*Id.*). Plaintiffs respond by contending that Dr. Agharkar's opinions are relevant because he "based his opinions on all he had learned about Bates's mental health, in the course of his work in the criminal case *and* in the present civil case." (Doc. 223 at 14) (emphasis in original). Plaintiffs also stress Dr. Agharkar's two interviews with Bates as they relate to the opinions he gave in his report.

Dr. Agharkar's opinions are relevant to the case at hand and should not be kept from the jury on that ground. While Dr. Agharkar's interviews with Bates did not occur until two years following the incident with Daughtry, Dr. Agharkar uses them as one piece of information from which to form his opinions in the context of this matter. Dr. Agharkar also reviewed thousands of pages of documents in coming to his opinions related to Bates's mental health. (*See* Doc. 223 at 2–4). The fact that Dr. Agharkar's interviews with Bates took place two years after the incident with Daughtry pursuant to Bates's Rule 11 hearing is a topic for cross-examination, as it goes to the weight of the evidence. *See City of Pomona v. SQM North American Corp.*, 750 F.3d 1036, 1044 (9th Cir. 2014) ("Challenges that go to the weight of the evidence are within the providence of a fact finder, not a trial court judge."); *see also Children's Broadcasting Corp.*, 357 F.3d at 865. As mentioned previously, should Plaintiff attempt to introduce irrelevant evidence specific to the Rule 11 context at trial, Defendants may object. However, this Court finds

- 12 -

that Dr. Agharkar's opinions are appropriately tailored and relevant to issues in this case and, as such, they pass the second prong of FRE 702.

### D. Qualifications

Finally, Defendants question Dr. Agharkar's professional qualifications. Defendants assert that "Dr. Agharkar does not work in a correctional setting nor does he have any experience or background in corrections. As such, he is not qualified to render opinions regarding the adequacy or provision of mental health care to detainees." (Doc. 212 at 7).

Plaintiffs reply by arguing that Dr. Agharkar is not giving opinions on the subject of "corrections." (Doc. 223 at 14–15). Instead, Plaintiffs contend, Dr. Agharkar's psychiatric opinions focus on Dr. Penn's opinions and diagnoses related to Daughtry and Bates's mental health. (*Id.*). Ultimately, Plaintiffs maintain, Dr. Agharkar's expertise in psychiatry is sufficient for his opinions to be admitted: "A physician, or psychiatrist, need not be a specialist in a particular field in order to qualify as an expert." (*Id.* at 14 (quoting *Blanchard v. Eli Lilly & Co.*, 207 F. Supp. 2d 308, 317 (D. Vt. 2002))).

Dr. Agharkar is a dual-board-certified Psychiatrist. (Doc. 212-1 at 13). As mentioned previously, he is also a Distinguished Fellow of the American Psychiatric Association. (*Id.* at 16). Although Dr. Agharkar is not a "correctional" psychiatrist, "whether an expert is the 'best' qualified or has sufficient specialized knowledge is generally a matter of weight, not admissibility." *LaCava v. Merced Irr. Dist.*, No. 1:10-CV-00853, 2012 WL 913697, at *5 (E.D. Cal. Mar. 16, 2012); *see also In re Silicone Gel Breast Implants Products Liab. Litig.*, 318 F. Supp. 2d 879, 889 (C.D. Cal. Apr. 22, 2004) (noting that "[a] court abuses its discretion when it excludes expert testimony solely on the ground that the witness's qualifications are not sufficiently specific if the witness is generally qualified."). Based on a review of Dr. Agharkar's experience and the record, the Court finds that Dr. Agharkar is qualified to offer his psychiatric opinions in the instant case.

///

## IV. CONCLUSION

Accordingly, the Court finds Dr. Agharkar to be qualified to testify to the opinions in his expert report under FRE 403, FRE 702 and *Daubert*. Additionally, his expert report satisfies the requirements of FRCP 26.[4]

Based on the foregoing,

**IT IS ORDERED** that the Defendants' Motion to Exclude Plaintiffs' Expert Bhushan S. Agharkar, M.D. is denied.

Dated this 16th day of November, 2017.

James A. Teilborg
Senior United States District Judge

---

[4] Defendants, of course, may still raise specific objections relating to the relevance of particular parts of expert testimony if items outside the scope of this matter are put forth at trial. Such concerns, however, are premature at this time.