**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| Shari Ferreira, et al., | No. CV-15-01845-PHX-JAT |
|---|---|
| Plaintiffs, | **ORDER** |
| v. | |
| Joseph M Arpaio, et al., | |
| Defendants. | |

Pending before the Court is Defendants' Motion to Exclude Plaintiffs' Expert, Pablo Stewart, M.D. (Doc. 213), filed on July 31, 2017. Having considered both parties' briefs, the Court now rules on the motion.

**I.   BACKGROUND**

The Court need not set forth a full recitation of the facts underlying this matter. For purposes of adjudicating Defendants' pending Motion to Exclude Dr. Stewart, a brief recital of the following facts, taken from Plaintiff Shari Ferreira's Third Amended Complaint is sufficient. Plaintiffs brought this civil rights action on behalf of decedent Zachary Daughtry in her capacity as personal representative of the estate. (Doc. 12 at 1). Daughtry was arrested in December of 2013 and booked into the 4th Avenue Jail complex. (*Id.* at 8). On July 9, 2014, Defendant Ryan Bates was placed in a cell with Daughtry. (*Id.* at 9). Officers passed their cell later that evening to find Bates standing over Daughtry, who was unresponsive and laying in a puddle of blood. (*Id.* at 12). Daughtry ultimately passed away from his injuries on July 20, 2014. (*Id.* at 15).

On November 21, 2016, Plaintiffs disclosed the report of their psychiatric expert, Dr. Pablo Stewart. On February 10, 2017, Defendants responded by filing a Motion to Strike Expert Report of Pablo Stewart. (Doc. 149). Defendants argued that Dr. Stewart's findings were conclusory, in addition to being displeased with his incorporation of over 360 pages of affidavits from another case by reference. Defendants argued that this disclosure violated Federal Rule of Civil Procedure ("FRCP") 26(a)(2)(B). A discovery hearing was held on March 22, 2017 in part to discuss Defendants' Motion to Strike. At the hearing, the Court denied Defendants' Motion to Strike, but gave Plaintiffs an opportunity to redo Dr. Stewart's report. Plaintiffs ultimately refiled Dr. Stewart's revised report on April 7, 2017. Defendants subsequently filed the Motion to Exclude currently at issue on July 31, 2017. (Doc. 213). Plaintiffs filed a Response on September 5, 2017, (Doc. 224), to which Defendants filed a Reply on September 12, 2017. (Doc. 226).

## II. LEGAL STANDARDS

Defendants move to exclude Plaintiffs' psychiatric expert, Dr. Pablo Stewart. Defendants contend that Dr. Stewart must be excluded because his expert report fails to comply with FRCP 26 and that his opinions are inadmissible pursuant to Federal Rule of Evidence ("FRE") 702. The Court will discuss each of the standards under these rules in turn.

### A. Federal Rule of Civil Procedure 26

FRCP 26 requires that if a party desires to have a witness present expert testimony, the party must disclose both the expert and provide a written report outlining information about the expert and her testimony. Fed. R. Civ. Pro. 26(a)(2)(A)–(B). The Rule requires, in relevant part, that the expert report must include:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
>
> (ii) the facts or data considered by the witness in forming them . . . .

Fed. R. Civ. P. 26(a)(2)(B).

"Bald conclusions, brief statements of ultimate conclusions with no explanation of the basis and reasons therefore, or reports omitting a statement of how the facts support the conclusions do not satisfy Rule 26(a)(2)(B)." *Izzo v. Wal-Mart Stores, Inc.*, No. 2:15-CV-01142-JAD-NJK, 2016 WL 593532, at *2 (D. Nev. Feb. 11, 2016) (citations omitted). Exclusion of expert testimony "is an appropriate remedy for failing to fulfill the required disclosure requirements of Rule 26(a)." *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001). However, questions related to the factual basis of an expert's testimony go "to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination." *Children's Broadcasting Corp. v. Walt Disney Co.*, 357 F.3d 860, 865 (9th Cir. 2004).

### B. Federal Rule of Evidence 702 and *Daubert*

In addition to FRCP 26 considerations, when either party attempts to offer expert testimony through an expert witness, the Court "must determine whether the expert witness is qualified and has specialized knowledge that will assist a trier of fact to understand the evidence or to determine a fact in issue." *McKendall v. Crown Control Corp.*, 122 F.3d 803, 805 (9th Cir. 1997) (citing Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 591 (1993) ("*Daubert I*")). The Court's analysis is made by comparing the proposed expert testimony to the requirements of FRE 702. FRE 702 provides that:

> A witness who is qualified by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> a. the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> b. the testimony is based on sufficient facts or data;
> c. the testimony is the product of reliable principles and methods; and
> d. the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

The United States Supreme Court and the Ninth Circuit Court of Appeals have issued opinions interpreting FRE 702 that will help guide this Court's analysis. *See Daubert I*; *see also Daubert v. Merrell Dow Pharmaceuticals*, 43 F.3d 1311 (9th Cir. 1995) ("*Daubert II*"). According to *Daubert I*, the Court has broad discretionary powers in determining whether a proposed expert is qualified under Rule 702 by "knowledge, skill, experience, training or education." *Daubert I* at 591; *see also Daubert II* at 1315. The Court must also decide whether the proposed subject matter of the expert opinion correctly concerns "scientific, technical, or other specialized knowledge" under Rule 702. *McKendall*, 122 F.3d at 806. Finally, the Court must ascertain "whether the testimony is helpful to the trier of fact, i.e., whether it rests on a reliable foundation and is relevant to the facts of the case." *Id.* (citing *Bogosian v. Mercedes-Benz of North America, Inc.*, 104 F.3d 472, 476 (1st Cir. 1997); Fed. R. Evid. 702).

The Supreme Court charged district courts with acting as "gatekeepers" to ensure that all scientific testimony and evidence admitted is both relevant and reliable. *Hall v. Baxter Healthcare Corp.*, 947 F. Supp. 1387, 1396 (D. Or. 1996). The task before this Court, then, is two-pronged. First, the Court must ensure that the proposed testimony exemplifies "scientific knowledge," constitutes "good science," and was "derived by the scientific method." *Id.* (citing *Daubert II*, 43 F.3d at 1316). Second, the Court must ensure that the testimony is "relevant to the task at hand" in that it "logically advances a material aspect of the proposing party's case." *Daubert II*, 43 F.3d at 1315 (quoting *Daubert I*, 509 U.S. at 597).

### 1. Reliability

Both *Daubert I* and *Daubert II* list factors that the courts can use in deciding the first prong, whether the expert testimony is scientifically valid and reliable. *Hall*, 947 F. Supp. at 1396. These factors include:

1. Whether the theory or technique employed by the expert is generally accepted in the scientific community;
2. Whether the theory has been subjected to peer review and publication;

> 3. Whether the theory can be and has been tested;
> 4. Whether the known or potential rate of error is acceptable; and
> 5. Whether the experts are proposing to testify about matters growing naturally or directly out of research, or whether they have developed their opinions expressly for purposes of testifying.

*Id.* (citing *Daubert I*, 509 U.S. at 593–94 (first four factors)); *Daubert II*, 43 F.3d at 1316–17 (adding fifth factor).

The list is illustrative, not exhaustive. *Daubert II*, 43 F.3d at 1317. In *Kumho Tire v. Carmichael*, the Supreme Court recognized that all expert theories may not fit neatly into the five factors carved out in *Daubert I* and *Daubert II*, and as such the test for reliability must be "flexible." 526 U.S. 137, 141 (1999). This is especially the case when the expert is testifying to "technical" or "other specialized knowledge" as opposed to scientific testimony. *Id.* at 148 (citing Fed. R. Evid. 702). As such, the Court may consider the five factors previously mentioned, but ultimately it must determine whether the testimony has "a reliable basis in the knowledge and experience of the relevant discipline." *Id.* at 149 (citing *Daubert I* at 592).

### 2. Relevance and Fit

In addition to analyzing the reliability of the expert's testimony, the Court has a duty to ensure that the testimony is "relevant to the task at hand" in that it "logically advances a material aspect of the proposing party's case." *Daubert II*, 43 F.3d at 1315 (quoting *Daubert I*, 509 U.S. at 597). Put another way, an expert's testimony must be "facially helpful and relevant" in assisting the trier of fact evaluate the evidence. *McKendall*, 122 F.3d at 807 (citing *Compton v. Subaru of America, Inc.*, 82 F.3d 1513, 1515 (10th Cir. 1996). Once again, the Court must exclude the testimony if it does not "fit" the matters at issue in the case. *Daubert I*, 509 U.S. at 591.

## III. ANALYSIS

As mentioned previously, Defendants move to exclude Plaintiffs' expert Dr. Stewart under both FRCP 26, FRE 702 and *Daubert*. The Court will address each

argument in turn.

## A. Federal Rule of Civil Procedure 26

Defendants' challenge to Dr. Stewart under FRCP 26 is two-fold. First, Defendants challenge whether Dr. Stewart's report complies with FRCP 26(a)(2)(B)(i), which requires his report provide the "basis and reasons" for his opinions. Fed. R. Civ. Pro. 26(a)(2)(B)(i) (requiring that an expert's report must contain "a complete statement of all opinions the witness will express and the basis and reasons for them."). Secondly, Defendants argue that in Dr. Stewart's revised report, he improperly included portions of affidavits from a past case he worked on, the *Graves* case. *See Graves v. Arpaio*, No. CV-77-00479-PHX-NVW, 2014 U.S. Dist. LEXIS 177494 (D. Ariz. Sept. 30, 2014) *vacated in part*, No. CV-77-00479-PHX-NVW, 2014 WL 6983316 (D. Ariz. Dec. 10, 2014). Defendants argue that these inclusions are improper incorporations by reference, and that in any event Dr. Stewart has failed to explain how the affidavits relate to this case. (Doc. 213 at 2–4).

Plaintiffs respond by pointing to the various sections of Dr. Stewart's 154-page report. (Doc. 224 at 2–3). Included in Dr. Stewart's report are his credentials, a list of documents that he reviewed in preparation for giving his opinion, a timeline of the notable events of the case, and Dr. Stewart's own opinions related to the case, among other things. (*Id.*) Plaintiffs ultimately argue that Dr. Stewart's credibility and the information he reviewed is beyond reproach and that challenges related to the weight of the evidence are reserved for the jury. (*Id.* at 3).

In his report, Dr. Stewart clearly lists over 460 documents that he relied on to form his opinions. (Doc. 213-2 at 11–33). This list provides the basis for the facts that underlie Dr. Stewart's opinions. From these facts, Dr. Stewart relied on his experience in correctional mental health and his review of the record to make conclusions about the case. These conclusions are outlined in the report. (*Id.* at 139–54). Dr. Stewart often spends many paragraphs explaining the facts that he relied on to reach a conclusion. (*Id.*). His analysis is thorough enough to avoid being classified as a "bald conclusion" or "brief

statements of ultimate conclusions with no explanation." *Izzo*, 2016 WL 593532, at *2. This Court is content that, at a minimum, Dr. Stewart's report includes the basis and reasons for his opinions.

As previously mentioned, Dr. Stewart's opinions are informed by his experience in the field of correctional mental health. Part of his experience was acquired during his work on the *Graves* case, affidavits from which are cited in his report. While Defendant objects to the inclusion of the *Graves* affidavits as irrelevant, Dr. Stewart has included commentary in his report that discusses the links between the two cases. It is undoubtedly true that the case at issue is *Ferreira v. Penzone* and not *Graves v. Penzone*. However, conclusions about certain conditions in the Maricopa County Jail that Dr. Stewart formulated during his work in *Graves* are not out-of-bounds simply because he came upon them in another matter. After reviewing the record of the current case, it appears that Dr. Stewart came to many similar conclusions that he arrived at in *Graves*. Ultimately, it is for the trier of fact to determine the weight (if any) to give Dr. Stewart's opinion.

While the report survives because it complies with Rule 26(a)(2)(B)(i), it is not a model of form. The Rule does not require the report to be well organized, convenient for the Court or opposing counsel, or that it be user friendly. The Court has already warned counsel that time spent locating items in the report will count against counsel's allotted trial time. That said, the motion to exclude for failure to comply with Rule 26 is denied.

### B. Federal Rule of Evidence 702 and *Daubert*

Defendants also argue that Dr. Stewart's opinions are inadmissible under FRE 702 because: (1) his opinions are not reliable and (2) his opinions are not relevant or helpful to a jury. (Doc. 213 at 2). The Court will address each argument in turn.

#### 1. Reliability

Defendants first argue that Dr. Stewart's testimony is unreliable because it is "based on subjective beliefs or unsupported speculation." (Doc. 213 at 5). Defendants also argue that Dr. Stewart's testimony is unsupported by scientific methodology or

learned treatises necessary for his opinions to be admitted. (*Id.*). Ultimately, Defendants conclude that Dr. Stewart is simply an advocate for Plaintiff, and not a scientific expert whose testimony is admissible. (*Id.*).

Plaintiffs reply by emphasizing the flexibility built into the FRE 702 standard, especially when evaluating social science experts. (Doc. 224 at 5). Plaintiffs claim that courts are free to consider an expert's personal knowledge and experience in a subject area to qualify them as an expert in that area. (*Id.*). Additionally, Plaintiffs explore some of the Advisory Notes behind FRE 702 which suggest that "rejection of expert testimony is the exception rather than the rule." (*Id.*). Plaintiffs finally claim that Dr. Stewart more than adequately laid out the facts upon which he based his conclusions, and that he properly evaluated these facts using his knowledge, skill and experience. (*Id.* at 6–11).

When evaluating the reliability of an expert's testimony, the courts in *Daubert I* and *Daubert II* compiled a list of factors to help guide their analysis. However, Dr. Stewart is not a scientific expert, and as such these factors are of little use here. Instead, the Court must determine whether Dr. Stewart's testimony has "a reliable basis in the knowledge and experience of [the relevant] discipline." *Daubert I,* 509 U.S. at 592.

As Plaintiffs point out, when evaluating an expert like Dr. Stewart, it is proper for the Court to consider Dr. Stewart's knowledge, skill and experience as applied to his conclusions. *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1015–16 (9th Cir. 2004). His experience includes serving the mentally ill as a psychiatrist, working with mental health patients in correctional and other institutional contexts, and designing and teaching courses in correctional psychiatry at the University of California, San Francisco. (Doc. 213-2 at 2–3). Dr. Stewart has significantly more than the "minimal foundation of knowledge, skill and experience," that "suffices" to cross the threshold of expert qualification. *Heston v. City of Salinas*, No. C 05-03658 JW, 2007 WL 4754777, at *2 (N.D. Cal. Mar. 30, 2007) (citing *Hangarter*, 373 F.3d at 1015–16).

Dr. Stewart's experience and training qualifies him as long as the facts he relied on exist. *Guidroz-Brault v. Missouri Pacific Railroad Co.*, 254 F.3d 825 (9th Cir. 2001).

Based on a thorough review of the record and Dr. Stewart's report, the Court finds that Dr. Stewart's conclusions and report are based on sufficient facts so as to be found reliable, passing the first prong of FRE 702.

### 2. Relevance and Fit

Defendants argue that Dr. Stewart's opinions are also inadmissible because they are irrelevant to the case at hand. According to Defendants, the present case is "a failure to protect case based upon the cell assignment of detainees Bates and Daughtry. This is not a case about the adequacy of either inmates' mental health treatment." (Doc. 213 at 6). Accordingly, Defendants contend, Dr. Stewart's opinions about Bates' and Daughtry's treatment and mental health is irrelevant to the issue at hand.

Plaintiffs disagree, arguing that Dr. Stewart's opinions are relevant because they relate to standard-of-care and causation issues. (Doc. 224 at 13). Plaintiffs argue that Dr. Stewart's opinions related to both detainees' mental health and the propriety of placing them together are critically relevant to their case. (*Id.* at 13–15).

Although Defendants may disagree with the veracity or weight of Dr. Stewart's opinions, his opinions are relevant to causation and psychiatric standard-of-care. For example, Dr. Stewart states his opinion that Daughtry should have been in psych housing as opposed to maximum security. (Doc. 213-2 at 142). This opinion alone is relevant to issues of causation, and should not be kept from the jury on grounds of relevance. "Challenges that go to the weight of the evidence are within the providence of a fact finder, not a trial court judge." *City of Pomona v. SQM North American Corp.*, 750 F.3d 1036, 1044 (9th Cir. 2014). Considering Dr. Stewart's report contains other opinions relevant to causation and standard-of-care, the Court finds the Dr. Stewart passes the second prong of FRE 702.

### C. Qualifications

Finally, Defendants question Dr. Stewart's professional qualifications. Defendants assert that Dr. Stewart is not a correctional expert and that he has no clinical experience in jail or prison. (Doc. 213 at 6). Defendants also claim that Dr. Stewart is not a board-

certified forensic psychiatrist, and that he does not have the specialized knowledge required to provide an expert opinion. (*Id.* at 7). As such, even if his testimony is otherwise reliable and relevant, Defendants argue that Dr. Stewart is not qualified to give it.

Plaintiffs reply by pointing to the many qualifications that Dr. Stewart has listed in his expert report. Plaintiffs refer to Dr. Stewart's "extensive clinical, research, and academic experience in the diagnosis, treatment, and prevention of mental illnesses in correctional contexts." (Doc. 224 at 15 (citations omitted)). Plaintiffs give examples of Dr. Stewart's experience, including his designing and teaching courses on correctional psychiatry and his administrative and clinical experience with jailed and hospitalized inmates in San Francisco. (*Id.* at 8-9). Ultimately, Plaintiffs suggest that "Dr. Stewart is qualified to state the psychiatric correctional related opinions he has stated." (*Id.* at 16).

This Court agrees. Dr. Stewart is a Psychiatrist with a broad background working with mental health patients, especially in correctional and institutional settings. Even more specifically, he has specialized in the "needs of severely mentally ill individuals in sheltered treatment programs in institutional contexts, such as the Mental Health Unit . . . currently operating in the Maricopa County Jail." (Doc. 213-2 at 3). In addition to his experiential credentials, Dr. Stewart has also written a multitude of papers and essays that have been published in professional and peer-reviewed journals, many on topics directly relevant to this case.[1] Dr. Stewart's academic qualifications, in addition to his over thirty years of experience working as a psychiatrist in institutional and correctional settings, demonstrates to the Court that Dr. Stewart possesses the requisite credentials to testify as an expert to his psychiatric, correctional-related opinions in this case.[2]

---

[1] Some particularly relevant examples include: "Mental Health Aspects of Diminished Capacity and Competency" (2007); "Classification of High risk and Special Management Prisoners, A National Assessment of Current Practices" (2004); "The Assessment, Diagnosis, and Treatment of the Patient with Multiple Disorders" (2001); "Psychiatric Assessment in the Criminal Justice Setting, Learning to Detect Malingering" (1999); "Mental Illness and Drug Abuse" (1999); and "Assessment and Treatment of the High Risk Offender" (1999). (Doc. 213-2 at 6-7).

[2] Defendants' argument that Dr. Stewart is not qualified to give his opinions

## IV. CONCLUSION

Accordingly, the Court finds Dr. Stewart to be qualified to testify to the opinions in his expert report under FRE 702 and *Daubert*. Additionally, his expert report meets the requirements of FRCP 26.

Based on the foregoing,

**IT IS ORDERED** that the Defendants' Motion to Exclude Plaintiffs' Expert Pablo Stewart, M.D. is **DENIED**.

Dated this 16th day of November, 2017.

James A. Teilborg
Senior United States District Judge

---

because he is not a board-certified forensic psychiatrist is misplaced. That is not the standard here. The "threshold for qualification is low, a minimal foundation of knowledge, skill, and experience suffices." *Heston*, 2007 WL 4754777, at *2. These types of challenges are better reserved for cross-examination, as any "lack of particularized expertise goes to the weight" of the testimony, "not to the admissibility . . . as an expert." *United States v. Garcia*, 7 F.3d 885, 890 (9th Cir. 1993).